UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**CASE NO: 17-CV-60098-WJZ**

CLAUDIO ALFONSO PALLARES, et al.
Plaintiffs,

Vs.

CWC TRANSPORTATION, LLC, et al.
Defendants.
_____/

### DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT WITH INCORPORATED MEMORANDUM OF LAW

The Defendants CWC TRANSPORTATION, LLC ("CWC"); CARLOS ASSAYAG ("Assayag"); CLEMENTE E. CRUZ, ("Cruz"); and WILLIAM MASARO ("Masaro"), collectively referred to as the "Defendants," pursuant to and in accordance with Fed. R. Civ. P. 56 and the Southern District of Florida's Local Rule 56.1(a) hereby file this their Motion for Summary Judgment.  For the reasons stated below, the Defendants respectfully request that their motion be granted and judgment be entered in their favor.

### Introduction

The Plaintiffs are professional truck drivers who were employed by the Defendants to deliver petroleum products from the fuel terminals of major petroleum manufactures and refineries (collectively referred to as "Supplier")[1] located at Port Everglades, Florida to retail gas stations located in Florida, in the final leg of interstate commerce as the Plaintiffs' delivery of these petroleum products are clearly part of the continuous stream of interstate travel.

---

[1] Valero, Chevron, Marathon, Exxon-Mobil, etc.

1

The Plaintiffs contend that they are entitled to overtime compensation from the Defendants for the hours that they worked in excess of forty (40) hours a week, pursuant to Section 7 of the Fair Labor and Standards Act ("FLSA"), 29 U.S.C §207(a).  However, the Defendants maintain that they are <u>not</u> required to pay overtime compensation to the Plaintiffs/drivers as the parties clearly fall within the Motor Carrier Exemption, under Section 13 (b)(1) of the FLSA and 29 U.S.C §213(b)(1) ("MCE").

This Motion for Summary Judgment raises a single, straightforward question of law; whether the Plaintiffs' delivery of petroleum products for the Defendants falls within the MCE. As will be shown below, there are no material facts in dispute and when applied to the controlling law, the Defendants are entitled to judgment as a matter of law because they unequivocally qualify for the exemption under the MCE.

### Joint Stipulation of Facts

The Parties have entered into a Joint Stipulation of Facts ("JSF") (DE 52).  The JSF acknowledges that the Plaintiffs were full time employees of the Defendants, (who are covered employers under the FLSA), driving tanker trucks provided by the Defendants, delivering petroleum products for the Defendants from fuel terminals located at Port Everglades, Florida to retail gas stations in Florida.  The Plaintiffs regularly worked over 40 hours per week. (JSF ¶¶1,2,3,4.)

The Plaintiffs claim that they are entitled to overtime compensation pursuant to the FLSA. (JSF ¶6.)   The Defendants contend that they are exempt from paying overtime compensation to Plaintiffs based on the MCE. (JSF ¶7.) The Plaintiffs' only basis for claiming

that the MCE does not apply to the case at bar is that the Plaintiffs' believe that their delivery of petroleum products for the Defendants was not part of interstate commerce. (JSF ¶8.)

The Defendants contend that the delivery of petroleum products from Port Everglades to the retail gas stations by the Plaintiffs/drivers was clearly part of interstate commerce. (JSF ¶¶2, 7.) Thus, the determination of this Court as to whether the MCE applies to the present action is dispositive to this motion.

The parties stipulated that the small vehicle exception to the MCE does not apply in this case. (JSF ¶10.) Therefore, the only issue before the Court is whether Plaintiffs' delivery of petroleum products for the Defendants was part of interstate commerce.

### Defendants' Statement of Undisputed Material Facts

The Defendants filed their Statement of Undisputed Material Facts ("SOF") contemporaneously with the filing of this Motion for Summary Judgment.

### Affidavit in Support of Motion for Summary Judgment

The Defendants filed a sworn Affidavit in Support of the Motion for Summary Judgment ("AFF.") contemporaneously with this Motion for Summary Judgement.  The Affiant was Defendant Carlos Assayag, a managing member of Defendant CWC Transportation.

### Standard of Review

Summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The movant "bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317. 3232 (1986). To discharge this burden, not only must the movant point out to the Court that there is an absence of evidence to support the non-moving party's case, *Id.* at 325, but the non-moving party must rely on more than conclusory statements of allegations unsupported by facts. *Evers v. General Motors Corp.*, 770 F 2d 984, 986 (11th Cir. 1985).

After the movant has met their burden under Rule 56 (c), the burden of production shifts and the non-moving party, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).* According to the plain language of the Federal Rules of Civil Procedure 56(e), the non-moving party, may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

As the question presented by the litigation is exclusively a question of law, there are no genuine disputes of material fact and the matter can appropriately be decided on summary judgment.

## **Argument**

**The Defendants are Entitled to Judgment as the Motor Carrier Exemption Negates any Obligation for the Defendants to Pay Overtime Compensation to the Plaintiffs.**

The Plaintiffs, are truck drivers employed by the Defendants (SOF ¶1; JSF ¶2), as defined under 29 CFR 782.3(a), who believe the MCE of the Fair Labor Standards Act ("FLSA") does

not apply to the present action because their transportation of petroleum products for the Defendants was not in interstate commerce. (SOF ¶ 20; JSF ¶8.) In fact, the Plaintiffs have claimed that the only basis as to why the MCE did not apply to them, is that "the transportation involved in Plaintiff's duties was not in interstate commerce." (SOF ¶¶ 20 & 21; and JSF ¶8.)

The FLSA requires employers to pay employees time-and-a-half for any hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). This provision, however, "shall not apply with respect to any employee with respect to whom the Secretary of the Department of Transportation ("Secretary") has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. §213(b)(1); U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009; 29 C.F.R. §782.2(a). The Secretary is deemed to have such power, and thereby the MCE is triggered, if two requirements are met: (1) the employee is employed by a carrier "whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under section 204 of the Motor Carrier Act"; and (2) the employee "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. §782.2(a); U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009. "[T]he Secretary need not actually exercise power to regulate under the Motor Carrier Act; an exemption under section 13(b)(1) [MCE] is created so long as the Secretary has the authority to regulate over a particular category of employees." *Spires v. Ben Hill County*, 980 F.2d 683, 686 (11th Cir. 1993); *Walters v. Am. Coach Lines of Miami, Inc.,*575 F.3d 1221 (11th Cir.2009); *Lewis v. Eskridge Trucking Co.* No. 11-11366 (11th Cir., 2011) (The Lewis Court

upheld the District Court's Summary Judgement in favor of the Defendant trucking company and held that an employee is exempt from the overtime provisions of the Fair Labor Standards Act if he is subject to the rules promulgated by the Secretary under the Motor Carrier Act.) *See* 29 U.S.C. §213(b)(1). The Secretary regulates employees who work for a private motor carrier that provides transportation in interstate commerce and whose work activities affect the "safety of operation" of that motor carrier, 29 C.F.R. §782.2, this includes truck drivers (i.e. the Plaintiffs herein), mechanics, loaders, and helpers. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 673, 677, (1947)

     **1.    The Defendants clearly meet the Two-Prong Test of the MCE and as such the Defendants are exempt from any overtime obligation to the Plaintiffs**.

     According to the United States Department of Labor ("DOL") regulations enforcing the FLSA, the applicability of the MCE "depends, both on the class to which his [Plaintiff's] employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a); U.S. Department of Labor, Wage & Hour Division, Opinion, FLSA 2005-10, January 11, 2005; U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009. Thus, to qualify for the MCE, the Defendant/employer must meet a two prong test: (1) that the Defendant is a carrier who is subject to the Secretary's jurisdiction and (2) that the employer's employees (i.e. the Plaintiffs) engage in activity that affects the safety of operation of motor vehicles in the transportation of passengers or property in interstate commerce. *See* 29 C.F.R. §§ 782.2(a)-(b) (2); *Mena v. McArthur Dairy, LLC,* 352 Fed. Appx. 303, 306 (11th Cir. 2009).[2] (The Court in Mena affirmed the Employer/Defendant's summary judgment as the employer established both

elements of the MCE.  Accordingly, the Plaintiffs cannot avail themselves of the benefits of the overtime pay provision found in 29 U.S.C. § 207(a)(1)); *Rodriguez v. Pan & Plus Baking, LLC,* Case Number: 12-23193-CIV-MORENO (S.D. Fla. 2013) (The Rodriguez/Plaintiff, truck drivers were denied overtime wages because they are exempt employees under the MCE and thus not entitled to overtime pay); See 29 U.S.C.§ 213(b)(1).

### A.   The Defendants Meet the First Prong of the Test of the Motor Carrier Exemption.

The first prong, whether an employer is properly classified as a motor carrier under the jurisdiction of the Secretary is clearly met as the Plaintiffs have acknowledged in their response to the Request for Admissions that the Defendants meet the definition of being either a "Motor Private Carrier" or "Motor Carrier" as defined in 49 USC §13102. (SOF ¶14.)  Consequently, by the Plaintiffs' own acknowledgments, the Defendants meet the first prong of the MCE.

In the event this Court requires further discussion regarding the first prong of the MCE, the Defendants note that whether an employer is properly classified as a Motor Carrier under the jurisdiction of the Secretary, is <u>always satisfied</u> where the Secretary has exercised jurisdiction over the employer. *See Mena,* 352 Fed. Appx. at 303.

In support that the Secretary has exercised jurisdiction over the Defendants, the Defendants have attached hereto <u>Exhibit A</u>,[3] which is the Department of Transportation ("DOT") Certificate issued to the Defendant CWC in 2007, which assigned to Defendant CWC, Motor Carrier Number MC-606256-C, and recognized Defendant CWC as a motor carrier, and authorizes Defendant CWC to engage in interstate commerce.

---

[2] Mena v. McArthur Dairy, LLC, No. 09-12657 Non-Argument Calendar, September 22, 2009; Southern District of Florida Docket No. 08-22585-CV-UU.

Further, the DOT issued to the Defendant CWC, the DOT Pipeline and Hazardous Materials Safety Administration, Hazardous Materials Certificate of Registration for Registration Years 2016-2019, Reg. No. 061616 551 064YA; HM Company ID: 100939. This registration and document is required by the DOT for the Defendant CWC through their employees/the Plaintiffs to transport petroleum products. A copy of the current 2016-2019 certification and the previously issued certification for years 2013 – 2016 are attached hereto as <u>Composite Exhibit B</u> to this motion.

Clearly, the foregoing registrations with the DOT not only grant authority to the Defendants and their employees/the Plaintiffs to engage in interstate commerce, it issues the Defendant their DOT Motor Carrier Number, and allows the Defendants through their employees, the Plaintiffs the authority to transport and deliver petroleum products in interstate commerce. Clearly, the Secretary has demonstrated significant regulatory oversight and control over the Defendant, as required in *Mena,* 352 Fed. Appx. At 303.

The Defendants demand compliance from all their drivers in accordance with 49 C.F.R. 390.11.[4] These regulations include, but are not limited to the Plaintiffs being required: (i) to have a Commercial Driver's License ("CDL") to be employed by the Defendants, (SOF ¶¶2, 3); pursuant to 49 U.S.C. §383.1, et. seq; (ii) required to maintain log books of the hours that they drive for the Defendants (SOF ¶4); pursuant to 49 U.S.C. §395.8, et. seq.; and (iii) limited in the amount of hours that the Plaintiffs may work (i.e. 70 hours per week) in accordance with 49 CFR §395.3. To ensure compliance by the Plaintiff/drivers, the Defendants have employed three (3) full

---

[3] The Plaintiff have agreed to the authentication of the both Exhibit A and B in a stipulation.
[4] Whenever a duty is prescribed for a driver or a prohibition is imposed upon the driver, it is the duty of the motor carrier to require observance of such duty or prohibition.

time inspectors whose sole function on a 24/7 basis is to ensure that the Plaintiff drivers are performing their duties in compliance with the Secretary, DOT and other regulations. (AFF. ¶ 21.)

Therefore, not only have the Plaintiffs acknowledged that the Defendants meet the first prong of the MCE, but the foregoing independently proves that the Defendants meet the first prong of the MCE, consistent with the 11th Circuit in *Mena,* 352 Fed. Appx. at 303.

**B.   The Defendants meet the Second Prong of the Test of the Motor Carrier Exemption**.

The second prong of the MCE is a two (2) part prong.  Whether the Plaintiffs: (i) engage in activities that affect the safety of operation of motor vehicles in the transportation of passengers or property (ii) in interstate commerce. *See* 29 C.F.R. §§ 782.2(a)-(b) (2); *Mena,* 352 Fed. Appx. at 303; U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009.

The Plaintiffs unequivocally acknowledged that the Plaintiffs' duties and responsibilities as employees of the Defendants include "safety affecting activities" within the meaning of the Motor Carrier Act of 1935, as amended.  (SOF ¶¶12 & 19.)  As such, the first part of the second prong of the MCE is clearly met and satisfied.

As to the second part of the second prong, the Plaintiffs clearly, unambiguously, and repeatedly acknowledged in their original Complaint (DE 1, ¶3); Amended Complaint, (DE 30, ¶3); and their Second Amended Complaint (DE 45, ¶3), (SOF ¶13) that the Plaintiffs worked as truck drivers delivering petroleum products for the Defendants and that the Defendants "engaged along with its employees in interstate commerce."  (SOF ¶¶1 & 13.)

9

As such, the second and final part of the second prong of the MCE is met and satisfied by the Plaintiffs' own pleadings (SOF ¶13) and acknowledgments (SOF ¶¶12 & 19).

In the event this Court requires further discussion regarding the second prong of the MCE, the Court must first examine the following:

<u>Contradictory Position by Plaintiff with Their Own Previously Stated Allegations</u>

The Plaintiffs on three (3) separate occasions, in their original Complaint (DE 1, ¶3); Amended Complaint, (DE 30, ¶3); and their Second Amended Complaint (DE 45, ¶3), repeatedly acknowledged that the Plaintiffs worked as truck drivers delivering petroleum products for the Defendant and that the, "Defendant who engaged along with its employees in 'interstate commerce'." (SOF ¶¶1 & 13.)  The Plaintiffs are now claiming that the only reason that the MCE does not apply to the case at bar is that that the Parties were not engaged in interstate commerce. (SOF ¶¶ 20 & 21; JSF ¶8.)

It is well established that a plaintiff must include factual allegations for each essential element of his or her claim in their complaint *GeorgiaCarry.org, Inc. v. Georgia*, 687 F.3d 1244, 23 Fla. L. Weekly Fed. C 1323 (11th Cir., 2012); and that judicial admissions must be clear, deliberate, and unequivocal factual assertions—whether made in pleadings, stipulations, responses to discovery, or orally in trial or court proceedings. *In re Malia,* No. 09–42273, 2012 WL 909738, *2 (Bkrtcy. N.D. Ga. Feb. 8, 2012) (quoting *Keller v. United States,* 58 F.3d 1194, 1199 n. 8 (7th Cir.1995); Rule 56 of the Federal Rules of Civil Procedure.  Further, such "factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. Arco/polymers, Inc.*, 720 F.2d 1391 (5th Cir. 1983), citing *Myers v. Manchester Insurance & Indemnity Co.*, 572 F.2d 134 (5th Cir. 1978);

10

*State Farm Mutual Auto Insurance Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968); *Mull v. Ford Motor Co.*, 368 F.2d 713, 716 (2d Cir. 1966); *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 110 F.Supp.3d 1285, 1293 (N.D. Ga., 2014) ("Judicial admissions '*in judicio*' are 'formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.'" *In re Malia,* No. 09–42273, 2012 WL 909738, *2 (Bkrtcy. N.D. Ga. Feb. 8, 2012) (quoting *Keller v. United States,* 58 F.3d 1194, 1199 n. 8 (7th Cir.1995).

For the Plaintiffs to now be allowed to recant or ignore their previous pleadings and representations would be repugnant to the holdings and responsibilities detailed in *GeorgiaCarry.org, Inc.,* 687 F.3d 1244, 23 Fla. L. Weekly Fed. C 1323 (11th Cir., 2012); et. al. Accordingly, this Court respectfully should find that the Plaintiffs' repeated representations that they engaged in <u>interstate commerce</u> be considered as proper admissions that the Plaintiffs duties as truck drivers delivering petroleum products for the Defendant was in interstate commerce.

<u>Further Argument as to the Second Prong of Motor Carrier Exemption Test</u>

In the event the Court still requires further discussion regarding the second prong of the MCE, the Defendants can clearly demonstrate that the Plaintiffs engaged in activities directly affecting the safety of operation of motor vehicles in transportation on public highways of property in interstate commerce. *Mena,* 352 Fed. Appx. at 303; U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009.

<u>A.  First Part of Second Prong of the of Motor Carrier Exemption<br>(Activities Directly Affecting the Safety of Operations)</u>

The Plaintiffs/drivers are responsible for the proper loading of the petroleum products from the Suppliers' fuel terminals at Port Everglades, the transportation of the petroleum

products along the roadways, which includes Interstate Highways (i.e. including but not limited to I-95, I-595, I-75) to the retail gas station locations and the delivery of the petroleum products at the retail locations.  (SOF ¶¶5, 11, 19; AFF. ¶22).  In fact, the Plaintiffs' have acknowledged that their work only involved duties directly relating to the delivery of petroleum products for the Defendants. (SOF ¶19)  Accordingly, the Plaintiffs performed job duties that clearly affected "the safety of operation" of motor vehicles.  *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 677-78 (1947) (It is not the amount of time or the character of a driver's activities that the employee/driver spends on activities affecting safety, but what the employee does in the time spent that is significant as safety is paramount.);  29 C.F.R. § 782.3(b); U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009, ¶2.

Accordingly, the Plaintiffs' duties and responsibilities as employees of the Defendants include "safety affecting activities" within the meaning of the Motor Carrier Act of 1935, as amended, was clearly acknowledged by the Plaintiffs. (SOF ¶19); and consistent with the *Levinson* standard and the U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009, ¶2.  Consequently, this requirement of the second prong of the MCE is clearly met.

**B.  Second Part of Second Prong of the of Motor Carrier Exemption
(Interstate Commerce)**

The Plaintiffs' delivery of the petroleum products from Port Everglades, FL to various retail locations in the State of Florida, was wholly within the state of Florida.  Nonetheless, for the purposes of the Motor Carrier Act, "purely intrastate transportation can constitute part of interstate commerce if it is part of a `continuous stream of interstate travel." *Mena,* 352 Fed.

12

Appx. at 303; *Chao v. First Class Coach Co., Inc.*, 214 F.Supp.2d. 1263, 1272 (M.D. Fla. 2001) (Purely intrastate transportation can constitute part of interstate commerce if it is part of a "continuous stream of interstate travel."); U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009; 29 C.F.R. 782.7(b)(1). For this to be the case, there must be a "practical continuity of movement" between the intrastate segment and the overall interstate flow. *Walters v. American Coach Lines of Miami, Inc.*, 575 F.3d 1221, (11th Cir. 2009) (Holding that intrastate shuttle service for cruise passengers from an airport to a seaport was part of the practical continuity of movement of interstate travel); see also *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 223 (2d Cir.2002) (applying this standard in analyzing applicability of MCE).

Courts are now "guided by practical considerations" in determining whether an employee's activities would be part of interstate commerce for purposes of the FLSA. *Marshall v. Victoria Transp. Co., Inc.*, 603 F.2d 1122, 1123 (5th Cir.1979). "When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency [such as the Defendants in this action] solely within the boundaries of one state does not make that portion of the trip any less interstate in character." *United States v. Yellow Cab Co.*, 332 U.S. 218, 228, 67 S.Ct. 1560, 1566, 91 L.Ed. 2010 (1947),[5] overruled on other grounds by *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). As a result, purely intrastate

---

[5] Although Yellow Cab involved a Sherman Act Anti-Trust Act Claim, the Courts have looked to it for guidance regarding the scope of interstate movement under different statutes including the Motor Carrier Act.   See, e.g., Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 256-57 & n. 10 (3d Cir.2005).   If

transportation can constitute part of interstate commerce if it is part of a "continuous stream of interstate travel." *Chao v. First Class Coach Co., Inc.*, 214 F.Supp.2d. 1263, 1272 (M.D. Fla. 2001); U.S. Department of Labor Wage and Hour Division, Fact Sheet #19, November 2009, ¶2.

The Defendants' business involves the transportation by tanker trucks of shipments of petroleum products by the Plaintiffs/drivers (JSF ¶2; SOF ¶¶1, 5) that have previously moved across state lines by pipeline, rails and/or ship from the Suppliers which are located outside of the State of Florida,[6] to the Suppliers' fuel terminals located at Port Everglades, Florida. (SOF ¶17; AFF. ¶23.)   After the petroleum products previous interstate movement, into the Suppliers' terminals at Port Everglades, the Plaintiffs would drive to Port Everglades, load the pre-ordered petroleum products from the Suppliers' fuel terminals into tanker trucks provided by the Defendants and drive and deliver the petroleum products to predetermined retail gas station customers, where they would deliver the pre-ordered petroleum products. (SOF ¶5; AFF. ¶24.) As such, the Plaintiffs/drivers who are employees of the Defendants, are clearly the final leg of interstate commerce, as they are part of the continuous stream of interstate travel, as defined by *Mena,* 352 Fed. Appx. at 303; *Chao,* 214 F.Supp.2d. at 1263; and the U.S. Department of Labor Wage and Hour Division, in Fact Sheet #19, November 2009, ¶2.

In further support of this process, each load of petroleum products that the Plaintiffs/drivers would pick up from Port Everglades and deliver to the retail locations is accompanied by a Bill of Lading, similar in form and substance as to the two (2) sample Bill of Ladings attached hereto as Exhibit C. (SOF ¶¶9 & 10; AFF. ¶25).  The Bill of Lading identifies

---

anything, Yellow Cab's conception of interstate commerce may be more restrictive than that applicable for FLSA claims.    See Marshall, 603 F.2d at 1124.

[6] There are no oil wells or oil refineries in the State of Florida (SOF ¶17.)

14

the Supplier, the petroleum fuel distributor, the carrier (i.e. the Defendant CWC), the end customer (i.e. the retail locations), and the type and amount of petroleum products delivered by the Plaintiffs/drivers to the designated point of destination (i.e. retail location, as pre-ordered by the customer (retail locations) through the Suppliers. (AFF. ¶26.)  The Bills of Lading are created based on standing orders from Suppliers' ratable volume of fuel as determined by the Suppliers; which is based on various supply agreements, historical performance and sales with the end-user gas stations as determined by the petroleum Suppliers. (AFF. ¶27.)

If the Court requires further analysis in support of the Defendants and their drivers, the Plaintiffs being engaged in the final leg of interstate commerce, then this Court should respectfully apply the new standard, specific criteria, and interpretation from the DOT for determining whether goods are moving in interstate commerce from terminal points or terminal storage, such as the Suppliers' fuel terminals at Port Everglades after they have crossed a state line.  DOT issued guidance as to its jurisdiction under the MCA for "motor traffic moving from warehouses or similar facilities to points in the same State after or preceding a movement from another State." 57 Fed. Reg. 19812, May 8, 1992.  These newer DOT guidelines incorporate case law that developed subsequent to the cases upon which section 782.7(b)(2) was originally based.  Thus, the DOT now provides the following factors[7] which are clearly met in this case, for

---

[7] (i) even if a shipper does not know the ultimate destination of specific shipments, it bases its determination on the total volume to be shipped through the warehouse on projections of customer demand that have some factual basis, rather than a mere plan to solicit future sales within the State. This may include, but is not limited to, historical sales in the State, actual present orders, and relevant market surveys of need; (ii) no processing or substantial product modification of substance occurs at the warehouse or distribution center. However, repackaging or reconfiguring (secondary packaging) may be performed; (iii) while in the warehouse, the merchandise is subject to the shipper's control and direction to the subsequent transportation; (iv) modern tracking systems allow tracking and documentation of most, if not all, of the shipments coming in and going out of the warehouse or distribution center; (v) the shipper or consignee must bear the ultimate payment for transportation charges even if the warehouse or distribution center directly pays the transportation charges to the carrier; (vi) the warehouse utilized is owned by the

determining the "fixed and persisting intent" of a shipper (i.e. the Suppliers) that merchandise continue in interstate commerce when moving goods intrastate from storage facilities, in that: (i) The Suppliers/Shippers know the ultimate destinations of their shipments as the Suppliers' shipments to their fuel terminals in Port Everglades, is based upon standing orders from Suppliers' ratable volume of fuel which is based on various supply agreements, historical performance and sales with the end-user gas stations as determined by the petroleum Suppliers. (AFF. ¶28.) (ii) There is no processing or substantial product modification that takes place at Port Everglades (SOF ¶17).   The petroleum products are stored for a brief period, until the Plaintiffs/drivers load the products in their tankers and deliver them to the retail locations, in accordance with the Bills of Lading.  (AFF. ¶28; SOF ¶¶5, 9.) (iii) The petroleum products while at Port Everglades is maintained at the fuel terminals owned, controlled and operated by the Suppliers. (AFF. ¶28) (iv) All of the Suppliers' petroleum products while at the Suppliers' fuel terminals located at Port Everglades is documented and tracked by the Suppliers/Shippers, this includes the receipt and distribution of their petroleum products which occurs 24/7. *Id.* (v) The Suppliers are ultimately responsible for all transportation charges relating to the Defendants. *Id.* (vi) The fuel terminals are owned and controlled by the Suppliers/shippers. *Id.* (vii) All of the petroleum products that are received and subsequently distributed are subject to de minimus "storage in transit"[8] at Port Everglades.  The petroleum products are constantly arriving at Port Everglades from the Suppliers, while at the same time the Plaintiffs/drivers are loading the

---

shipper; (vii) the shipments move through the warehouse pursuant to a storage in transit provision.  57 Fed. Reg. at 19813. *Advantage Tank Lines, Inc.*, No. MC-C-30198, 10 ICC 2d 64 (1994). See also *Atlantic Independent Union v. Sunoco*, 2004 WL 1368808 at *7 (E.D. Pa. 2004); 29 C.F.R. 782.7(b)(2).

[8] "Storage in Transit," is defined as the storing at an intermediate point of goods that are to be reshipped to their final destination with in a prescribed period. Merriam-Webster.com.  September 9, 2017.

designated petroleum fuel into their trucks and transporting the petroleum products to the retail

gas stations, reflected on the Bills of Lading provided to them by the Defendants. (SOF ¶¶ 5, 9'

AFF. ¶28.)

In *Mena*, the milk products were not modified once it reached McArthur's warehouse.  In

the case at bar, the petroleum products were not modified when they were at the Suppliers' fuel

terminals at Port Everglades.   Like in *Mena*, the petroleum products were distributed to the

Suppliers' customers based on standing orders from the Suppliers' supply agreements, historical

performance and sales with the point of destination gas stations as determined by the Suppliers.

Under these circumstances, the Suppliers' fuel terminals, like McArthur's warehouse was nothing

more than a temporary storage hub used to facilitate the orderly distribution of products through

interstate commerce.   Thus, the Plaintiffs/drivers transporting petroleum products on behalf of

the Suppliers, like *Mena's* transportation of milk products was clearly part of the "practical

continuity of movement" across state lines and was the final leg in interstate commerce.  *Mena,*

352 Fed. Appx. at 303; *See Walters v. Am. Coach Lines of Miami, Inc.,*575 F.3d 1221, 1229

(11th Cir.2009) (Holding that intrastate shuttle service for cruise passengers from an airport to a

seaport was part of the practical continuity of movement of interstate travel); *Kennedy v. Equity*

*Transp. Co.*, 2015 U.S. Dist. LEXIS 143565 (N.D.N.Y Oct. 22, 2015)(Although applicability of

the Motor Carrier Act (MCA) exemption from overtime is predicated on "interstate commerce,"

interstate commerce can include wholly intrastate travel by a covered employee when shipped in

a "practical continuity of movement" across state lines); *Abel v. S. Shuttle Servs., Inc.,* 631 F.3d

1210, 1216-18 (11th Cir.2011) (per curiam) (Applying the MCA exemption to airport shuttle

company because passenger reservations were often purchased as part of a package deal with

airline tickets, creating a practical continuity of movement in interstate commerce); *Walters,* 575 F.3d at 1221, 1229 (quoting *Chao,* 214 F.Supp.2d at 1263, 1272.)

It is abundantly clear, that the Plaintiffs/drivers and the Defendants are engaged in interstate commerce; not only as pled by the Plaintiffs themselves in their three (3) versions of the Complaints; but because the Defendants have unequivocally shown that the Plaintiffs/drivers on behalf of the Defendants transportation of petroleum products for the Suppliers was clearly part of the "practical continuity of movement" across state lines and was the final leg in interstate commerce, in conformity with the cited and controlling case law. As such, the second and final requirement of the second prong of the Motor Carrier Exemption is met and satisfied.

Accordingly, the Defendants have successfully established all of the required elements for applying the MCE to the case at bar. Therefore, the Plaintiffs cannot avail themselves of the benefits of the overtime pay provision found in 29 U.S.C. § 207(a)(1). Accordingly, The Defendants' Motion for Summary Judgment should be granted.

## CONCLUSION

The Plaintiffs unequivocally made representations and acknowledgments throughout this litigation, through: (i) the Plaintiffs' three (3) versions of their Complaint (Original Complaint, Amended Complaint, and Second Amended Complaint); (ii) through the Joint Stipulation of Facts; and (iii) through the discovery process, that clearly and succinctly support that they meet all the criteria for the Motor Carrier Exemption to be applicable to this action. These representations and acknowledgments include, but are not limited to:

1.     The Defendants meet the definition of being either a "Motor Private Carrier" or "Motor Carrier" as defined in 49 USC §13102. (SOF ¶14).

18

2.      The Plaintiffs' duties and responsibilities as employees of the Defendants include "safety affecting activities" within the meaning of the Motor Carrier Act of 1935, as amended. (SOF ¶¶12 & 19).

3.      The Plaintiffs worked as truck drivers delivering petroleum products for the Defendants and that the, "Defendants who engaged along with its employees [i.e. the Plaintiff's] in 'interstate commerce'." (SOF ¶13).

Aside from the Plaintiffs' above acknowledgements and representations, the Defendants have clearly met the standards set forth by the controlling law required to have the Motor Carrier Exemption apply to the case at bar. This present action is absolutely analogous to the 11th Circuit Court of Appeals decisions in *Mena v. McArthur Dairy, LLC,* 352 Fed. Appx. 303, 306 (11th Cir. 2009), a Southern District case[9] as well as other 11th Circuit Court cases and Southern District Court cases cited herein. For the foregoing reasons, the Defendants respectfully request that this Honorable Court enter Summary Judgment in favor of the Defendants, and declare that the parties herein clearly fall within the Motor Carrier Exemption, under Section 13 (b)(1) of the FLSA and 29 U.S.C. §213(b)(1); and as such, the Plaintiffs are not entitled to over-time compensation from the Defendants.

WHEREFORE the Defendants respectfully requested that this Honorable Court grant the Defendants' Motion for Summary Judgment, as the Defendants have clearly proven that the Motor Carrier Exemption applies to the case at bar and the Plaintiffs are thus barred from the recovery of overtime compensation by the Defendants; together with whatever further relief that this Honorable Court deems fit and proper.

Respectfully submitted:

RANDY M. GOLDBERG & ASSOCIATES, PA
1101 SW 71ST Avenue
Plantation, FL 33317
754-224-0867
FBN: 045187
rmgesq@comcast.net

### CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading which was filed with the Clerk of the Court was provided to the Plaintiff's attorney, Elliot Kozolchyk, Esquire, Koz Law, P.A. 320 SE 9th Street, Fort Lauderdale, FL 33316 @ ekoz@kozlawfirm.com via the Court's ECM-Portal on October 12, 2017.

*Randy M. Goldberg Esquire*
RANDY M. GOLDBERG & ASSOCIATES, PA
1101 SW 71ST Avenue
Plantation, FL 33317
754-224-0867
FBN: 045187
rmgesq@comcast.net
randymgoldberg@gmail.com

---

[9] Honorable Ursula Ungaro was the trial court judge.

# EXHIBIT A



U.S. Department of Transportation
Federal Motor Carrier Safety Administration

1200 New Jersey Ave., S.E.
Washington, DC 20590

**SERVICE DATE**
August 17, 2007

### CERTIFICATE

**MC-606256-C**

CWC TRANSPORTATION LLC
PEMBROKE PINES, FL

This Certificate is evidence of the carrier's authority to engage in transportation as a **common carrier of property (except household goods)** by motor vehicle in interstate or foreign commerce.

This authority will be effective as long as the carrier maintains compliance with the requirements pertaining to insurance coverage for the protection of the public (49 CFR 387) and the designation of agents upon whom process may be served (49 CFR 366). The carrier shall also render reasonably continuous and adequate service to the public. Failure to maintain compliance will constitute sufficient grounds for revocation of this authority.

*Kathy A. Weiner*

Kathy Weiner, Chief
Information Systems Division

**NOTE:** Willful and persistent noncompliance with applicable safety fitness regulations as evidenced by a DOT safety fitness rating of "Unsatisfactory" or by other indicators, could result in a proceeding requiring the holder of this certificate or permit to show cause why this authority should not be suspended or revoked.

CMO

# EXHIBIT B

UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION



**HAZARDOUS MATERIALS
CERTIFICATE OF REGISTRATION
FOR REGISTRATION YEAR(S) 2013-2016**

**Registrant:**   CWC TRANSPORTATION LLC
Attn: CARLOS ASSAYAG
1093 SHOTGUN RD
SUNRISE, FL 33326

This certifies that the registrant is registered with the U.S. Department of Transportation as required by
49 CFR Part 107, Subpart G.

This certificate is issued under the authority of 49 U.S.C. 5108. It is unlawful to alter or falsify this
document.

**Reg. No: 050313 550 038VX**       **Issued: 05/06/2013**        **Expires: 06/30/2016**

**HM Company ID: 100939**

---

### Record Keeping Requirements for the Registration Program

The following must be maintained at the principal place of business for a period of three years from the
date of issuance of this Certificate of Registration:

(1)  A copy of the registration statement filed with PHMSA; and
(2)  This Certificate of Registration

Each person subject to the registration requirement must furnish that person's Certificate of Registration
(or a copy) and all other records and information pertaining to the information contained in the registration
statement to an authorized representative or special agent of the U. S. Department of Transportation upon
request.

Each motor carrier (private or for-hire) and each vessel operator subject to the registration requirement
must keep a copy of the current Certificate of Registration or another document bearing the registration
number identified as the "U.S. DOT Hazmat Reg. No." in each truck and truck tractor or vessel (trailers
and semi-trailers not included) used to transport hazardous materials subject to the registration
requirement. The Certificate of Registration or document bearing the registration number must be made
available, upon request, to enforcement personnel.

For information, contact the Hazardous Materials Registration Manager, PHH-52, Pipeline and Hazardous
Materials Safety Administration, U.S. Department of Transportation, 1200 New Jersey Avenue, SE,
Washington, DC 20590, telephone (202) 366-4109.

UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION



## HAZARDOUS MATERIALS
## CERTIFICATE OF REGISTRATION
## FOR REGISTRATION YEAR(S) 2016-2019

**Registrant:**   CWC TRANSPORTATION LLC
Attn: CARLOS ASSAYAG
1093 SHOTGUN RD
SUNRISE, FL 33326

This certifies that the registrant is registered with the U.S. Department of Transportation as required by 49 CFR Part 107, Subpart G.

This certificate is issued under the authority of 49 U.S.C. 5108. It is unlawful to alter or falsify this document.

**Reg. No: 061616 551 064YA**          **Effective: 07/01/2016**          **Expires: 06/30/2019**

**HM Company ID: 100939**

---

### Record Keeping Requirements for the Registration Program

The following must be maintained at the principal place of business for a period of three years from the date of issuance of this Certificate of Registration:

(1)  A copy of the registration statement filed with PHMSA; and
(2)  This Certificate of Registration

Each person subject to the registration requirement must furnish that person's Certificate of Registration (or a copy) and all other records and information pertaining to the information contained in the registration statement to an authorized representative or special agent of the U. S. Department of Transportation upon request.

Each motor carrier (private or for-hire) and each vessel operator subject to the registration requirement must keep a copy of the current Certificate of Registration or another document bearing the registration number identified as the "U.S. DOT Hazmat Reg. No." in each truck and truck tractor or vessel (trailers and semi-trailers not included) used to transport hazardous materials subject to the registration requirement. The Certificate of Registration or document bearing the registration number must be made available, upon request, to enforcement personnel.

For information, contact the Hazardous Materials Registration Manager, PHH-52, Pipeline and Hazardous Materials Safety Administration, U.S. Department of Transportation, 1200 New Jersey Avenue, SE, Washington, DC 20590, telephone (202) 366-4109.

# EXHIBIT C

## CWC Transportation
1093 Shotgun Road
Sunrise, 33326
**954-431-5389**
Date:Monday 1/16/2017

## sun-MARATHON 149
16815 S Dixie HWY
Palmetto Bay , FL 33157

# SUNSHINE

| Product | Gross Vol | Net Vol | In | Out | Terminal | Manifest |
|---|---|---|---|---|---|---|
| Regular | 5703 | 5648 | 88 | 125 | MAR-PES | 957483 |
| ꓽuper | 2801 | 2772 | 29 | 50 | MAR-PES | 957483 |

**Time Loaded:** 1/16/2017 2:01:36 PM
**Time Dropped:** 1/16/2017 3:33:55 PM
**Driver:** Raydel Martinez

Customer Signature:

1

COMPANY:          MPLX TERMINALS LLC
ORIGIN:           808 SE 24TH ST FT LAUDERDALE, FL 33316

LOADING TICKET / BILL OF LADING
COMPANY REGISTRATION NUMBER: 6396
FOLIO #: 20170111

BOL NUMBER 957483   REV: 0  (019855)
RT LOAD:   01/16/2017 13:45:28   END LOAD:  01/16/2017 13:56:03

SOLD TO / CUSTOMER / CONSIGNEE:
492636 : SUNSHINE GASOLINE DISTRIBUTOR-BRAND

SHIP TO / DESTINATION:
492636 : SUNSHINE GASOLINE DISTRIBUTOR-BRAND
VARIOUS

FL
P.O. #
REQUISITION:

CUSTOMER ACCOUNT # : 449263800101000
SUPPLIER: BRANDED JOBBERS

DEST : 101

RECEIVED BY / CARRIER:        7926:C W C TRANSPORTATION L

SCAC CODE : CWCL
TRAILER : 20

WHERE THIS DOCUMENT CONSTITUTES A BILL OF LADING, AND AN EXCEPTION STATED IN 49 C.F.R. §172.204(6) IS NOT MET, THIS IS TO CERTIFY THAT THE
BELOW-NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED, LABELED AND ARE IN PROPER CONDITION FOR TRANSPORTATION
ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF TRANSPORTATION. CARRIER CERTIFIES THAT THE CARGO TANK SUPPLIED FOR THIS
SHIPMENT IS A LAWFUL CONTAINER FOR TRANSPORTATION OF THE LISTED COMMODITIES. CARRIER CERTIFIES THAT THE CARGO TANK WAS REASONABLY
FREE OF EXCESSIVE RESIDUE OR OTHER CONTAMINATING MATERIALS WHEN PRESENTED FOR LOADING.
SEE REVERSE FOR ADDITIONAL TERMS AND CONDITIONS

10058091 MARTINEZ, RAYDEL (RM)        X                          : CARRIER'S AGENT (DRIVER)

HAZARD INFORMATION AND LABEL ON REVERSE SIDE

DOT SHIPPING NAME                         HAZARD LABEL #                                        GALLONS
UN1203, GASOLINE, 3, PG II                      1                                               8804
                                                     TOTAL QUANTITY 1 CARGO TANK:               8804

24 HOUR EMERGENCY PHONE NUMBER 1-877-627-5463
FINISHED PRODUCTS

| COMP. | PROD-CODE | DESCRIPTION | GROSS | NET | TEMP | GRAV | SEE NOTES BELOW |
|-------|-----------|-------------|-------|-----|------|------|-----------------|
| 1 | 7845 - | BRAND 93 OCTANE WITH 10% ETHANOL | 2801 | 2772 | 75.2 | 59.8 | 1,6,10,48,Z |
| 2 | 7842 - | BRAND 87 OCTANE WITH 10% ETHANOL | 1301 | 1286 | 74.2 | 64.6 | 1,6,10,48,Z |
| 3 | 7842 - | BRAND 87 OCTANE WITH 10% ETHANOL | 1100 | 1090 | 72.7 | 64.6 | 1,6,10,48,Z |
| 4 | 7842 - | BRAND 87 OCTANE WITH 10% ETHANOL | 901 | 892 | 72.9 | 64.6 | 1,6,10,48,Z |
| 5 | 7842 - | BRAND 87 OCTANE WITH 10% ETHANOL | 2401 | 2378 | 73.2 | 64.6 | 1,6,10,48,Z |
| TOTALS: | 7845 - 5A | BRAND 93 OCTANE WITH 10% ETHANOL | 2801 | 2772 | | | |
| | 7842 - 5A | BRAND 87 OCTANE WITH 10% ETHANOL | 5703 | 5646 | | | |

NOTES

Z     NOT INTENDED FOR USE IN E15.
1     CONVENTIONAL GASOLINE - THIS PRODUCT DOES NOT MEET THE REQUIREMENTS FOR REFORMULATED GASOLINE (RFG) AND MAY NOT BE USED IN ANY
      REFORMULATED GASOLINE COVERED AREA.
6     DETERGENT-ADDITIZED GASOLINE.
10    E10: CONTAINS BETWEEN 9 AND 10 VOL % ETHANOL.
48    THIS VOLUME OF NEAT OR BLENDED ETHANOL IS DESIGNATED AND INTENDED FOR USE AS TRANSPORTATION FUEL OR JET FUEL IN THE 48 U.S.
      CONTIGUOUS STATES AND HAWAII. ANY PERSON EXPORTING THIS FUEL IS SUBJECT TO THE REQUIREMENTS OF 40 CFR 80.1430.

RECEIPT IS ACKNOWLEDGED OF THE ABOVE MERCHANDISE IN GOOD CONDITIONS AND IN THE QUANTITIES INDICATED

X                                                               : CUSTOMER / CONSIGNEE

## CWC Transportation
1093 Shotgun Road
Sunrise, 33326
954-431-5389
Date:Monday 1/16/2017

---

### sun-EXXON 91
901 NW 19th Street
Ft. Lauderdale, FL.

## SUNSHINE

| Product | Gross Vol | Net Vol | Inches | | Terminal | Manifest |
|---------|-----------|---------|--------|--------|----------|----------|
| | | | **In** | **Out** | | |
| Regular | 6000 | 5958 | 392 | 68 | EXX-PTE | 1384858 |
| | | | 35 | 74 | | |

| Product | Gross Vol | Net Vol | Inches | | Terminal | Manifest |
|---------|-----------|---------|--------|--------|----------|----------|
| | | | **In** | **Out** | | |
| Super | 2500 | 2482 | 35 | 54 | EXX-PTE | 1384858 |

**Time Loaded:** 1/16/2017 12:55:37 PM
**Time Dropped:** 1/16/2017 2:10:02 PM
**Driver:** Lloyd Crowle

Customer Signature:

1

|  | | | | BOL #<br>1384858 |
|---|---|---|---|---|
| SOLD TO:<br>SUNSHINE GASOLINE DISTRIBUTORS,<br>1650 NW 87 AVE<br>DORAL, FL  33172 | SOLD TO /<br>CONTRACT#<br>IN0000368590 | PO # | PLANT ID# 00000A7<br>FOLIO #:  01/016<br>SHIPMENT ORIGIN:<br>1150 Spangler Blvd.<br>Ft. Lauderdale, FL 33316 | |
| SHIP TO:<br>SUNSHINE GASOLINE DISTRIBUTORS,<br>SUNSHINE GASOLINE DISTRIBUTORS, INC<br>P/U PORT EVERGLADES, FL - XOM<br>PORT EVERGLADES, FL  33316 | SHIP TO #<br>IN0000368610<br>LOAD IN /<br>DATE:<br>12:37<br>01/16/17 | LOAD OUT /<br>DATE:<br>12:46<br>01/16/17 | TRANSFEROR:<br>ExxonMobil Oil Corporation<br>22777 Springwood Village Parkway<br>Spring, TX  77389<br>EPA Facility Reg. #     0435081694 | |
| TRNS CODE: 530     SEQ#: 5290 | | | EPA #:<br>4343 | FEIN #:<br>13-5401570 |

| NO. UNITS &<br>CONTAINER TYPE | BASIC DESCRIPTION<br>Identification Number (UN or NA), Proper Shipping Name, Hazard Class, Packing Group, per 172.101, 172.202, 172.203 | TOTAL QUANTITY<br>Weight, Gallons, Volume |
|---|---|---|
| 1 CARGO TANK | UN1203, GASOLINE, 3,  P.G. II | 8500 GALLONS |

**FOR PRODUCT EMERGENCY - SPILL, LEAK, FIRE, OR EXPOSURE, CALL CHEMTREC  800-424-9300 DAY OR NIGHT. CCN687006**
SEE REVERSE SIDE FOR HAZARDOUS WARNING, INITIAL EMERGENCY RESPONSE GUIDE (ERG128) AND OTHER INFORMATION.

| METER # | MATERIAL# | MATERIAL DESCRIPTION | GROSS | TEMP. | GRAVITY | NET |
|---|---|---|---|---|---|---|
| Bay-03 | 106337 | EXXON 93 OCT CG 3.5W%O2 ETOH | 2500 | 70.9 | 58.6 | 2482 |
| 01-01 | 103687 | 93 OCT CBOB - BASE | 2250 | | | 2235 |
| 01-02 | 106268 | ETHANOL,NO RINS TRANSFERRED | 250 | | | 247 |
| Bay-03 | 106353 | EXXON 87 OCT CG 3.5W%O2 ETOH | 2200 | 69.7 | 65.3 | 2185 |
| 02-01 | 103685 | 87 OCT CBOB - BASE | 1980 | | | 1968 |
| 02-02 | 106268 | ETHANOL,NO RINS TRANSFERRED | 220 | | | 217 |
| Bay-03 | 106353 | EXXON 87 OCT CG 3.5W%O2 ETOH | 3800 | 69.9 | 65.3 | 3773 |
| 03-01 | 103685 | 87 OCT CBOB - BASE | 3420 | | | 3398 |
| 03-02 | 106268 | ETHANOL,NO RINS TRANSFERRED | 380 | | | 375 |
| | | | ----- | | | ----- |
| | | Total Gallons: | 8500 | | | 8440 |

THIS PRODUCT IS CONVENTIONAL GASOLINE CONTAINING DETERGENT ADDITIVE. THIS
PRODUCT DOES NOT MEET THE REQUIREMENTS FOR REFORMULATED GASOLINE AND MAY NOT BE
USED IN ANY REFORMULATED GASOLINE COVERED AREA.
E10: CONTAINS  BETWEEN 9 AND 10 VOL% ETHANOL.
This volume of neat or blended ethanol is designated and intended for use as
transportation fuel or jet fuel in the 48 U.S.contiguous states and Hawaii. Any
person exporting this fuel is subject to the requirements of 40 CFR 80.1430.
DOR LICENSE # 13-5401570

EXXONMOBIL IS RESPONSIBLE FOR COLLECTING AND REMITTING THE STATE MOTOR FUEL TAXES.

ALL DOT SHIPPING INFORMATION CONTAINED ON PAGE NO. 1                         PAGE NO. 1

| DRIVER NAME<br>LLOYD  CROWLE<br>TRUCK: | DRIVER #<br>3656<br>TRAILER 1:13 | SCAC<br>CWCL | FEIN #<br>0260156778 | Carrier has loaded and accepted the above named materials and<br>certifies that this shipment is properly placarded and the container<br>supplied for this shipment is a proper container for the transportation |
|---|---|---|---|---|
| CARRIER<br>CWC TRANSPORTATION<br>1093 SHOTGUN RD<br>SUNRISE, FL  33326<br>(954)862-7776 | | FREIGHT<br>COLLECT | | of this commodity under D.O.T. regulations.  Driver acknowledges<br>Emergency Response Guide 128 information received on reverse<br>side of this document.<br>DATE:  01/16/17<br>DRIVER/ AGENT |