UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 17-CV-60098-WJZ

CLAUDIO ALFONSO PALLARES, et al.
Plaintiffs,

Vs.

CWC TRANSPORTATION, LLC, Et. al.,
Defendant.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT WITH INCORPORATED MEMORANDUM OF LAW**

The Defendants file this Response to Plaintiffs' Motion for Partial Summary Judgment. For the reasons stated below, the Plaintiffs' Motion for Summary Judgment should be denied.

**INTRODUCTION**

The Plaintiffs believe that the Motor Carrier Exemption ("MCE") does not apply to the case at bar, based on the theory that the Plaintiff and Defendants were not engaged in interstate commerce, in that (i) the petroleum products were altered while at Port Everglades, Florida, and (ii) that the shipper's fixed and persistent intent ended when the petroleum products arrived at Port Everglades, Florida, even though the Plaintiffs have already pled that the Defendants and Plaintiffs were engaged in interstate commerce. The analysis presented by the Plaintiffs is distinguishable from the case at bar and repugnant to the controlling law. Accordingly, the Plaintiffs' Motion for Summary Judgment should be denied.

**ARGUMENT**

**I. Plaintiff Pled That He Was Engaged in Interstate Commerce**

The Plaintiffs clearly and unambiguously pled in their Complaint (DE 1, ¶3), their

1

Amended Complaint (DE 30 ¶3), and their Second Amended Complaint (DE 45 ¶3) that the Plaintiffs worked as truck drivers delivering petroleum products for the Defendants and that the Defendants "engaged along with its employees in interstate commerce." (SOF ¶¶1 & 13.)

The Plaintiffs are now claiming that the only reason that the MCE does not apply to the case at bar is that the Parties were not engaged in interstate commerce. (SOF ¶¶ 20, 21; JSF ¶8.)

It is well established that the plaintiffs must include factual allegations for each essential element of his or her claim in their complaint *GeorgiaCarry.org, Inc. v. Georgia*, 687 F.3d 1244, 23 Fla. L. Weekly Fed. C 1323 (11th Cir., 2012); and that judicial admissions must be clear, deliberate, and unequivocal factual assertions—whether made in pleadings, stipulations, responses to discovery, or orally in trial or court proceedings. *In re Malia*, No. 09–42273, 2012 WL 909738, *2 (Bkrtcy. N.D. Ga. Feb. 8, 2012) (quoting *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir.1995). Further, such "factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. Arco/polymers, Inc.*, 720 F.2d 1391 (5th Cir. 1983), citing *Myers v. Manchester Insurance & Indemnity Co.*, 572 F.2d 134 (5th Cir. 1978; *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 110 F.Supp.3d 1285, 1293 (N.D. Ga., 2014) ("Judicial admissions 'in judicio' are 'formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.'" *In re Malia*, No. 09–42273, 2012 WL 909738, *2 (Bkrtcy. N.D. Ga. Feb. 8, 2012) (quoting *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir.1995).

For the Plaintiffs to now be allowed to recant or ignore their previous pleadings and representations would be repugnant to the holdings and responsibilities detailed in *GeorgiaCarry.org, Inc.*, 687 F.3d 1244, 23 Fla. L. Weekly Fed. C 1323 (11th Cir., 2012); et. al.

Accordingly, this Court respectfully should find that the Plaintiffs' representation in their three (3) versions of their Complaint that they engaged in <u>interstate commerce</u> be considered as a proper admission. Accordingly, this Court respectfully should deny Plaintiffs' Motion for Summary Judgment as the Plaintiffs admitted that they were engaged in interstate commerce.

## II. The Petroleum Products Were Not Altered While at Port Everglades by Defendants.

Neither the Defendants nor the Plaintiff ever took ownership or title[1] of the Suppliers'[2] petroleum products and never introduced any additives to the Suppliers' petroleum products or engaged in any activity that alters, changes, or affects the petroleum products that are loaded into the Defendants' trucks at the Suppliers' terminals at Port Everglades, as the Defendants are common carriers of the Suppliers' whose sole purpose is the transportation of the Suppliers' petroleum products delivering them to the Suppliers' end-user customers. (2d SOF ¶¶7,8,10,11,12.) Certain petroleum products like diesel fuel or Rec-90 are not subject to any additives. Any additives that may have been added to some of the Suppliers' other petroleum products, was done by the Suppliers, at their facilities, to their own products, before the Defendants' driver (the Plaintiff), took control of the petroleum products, when the Supplier loaded the petroleum products into the Defendants' tanker trucks at the Suppliers' terminals. (2d SOF ¶¶6,7.)

In further support that the Plaintiff's motion and analysis is incorrect, is the petroleum case of *Galbreath v. Gulf oil Corp.*, 413 F 2d 941 (5th Cir. 1969). The *Galbreath* Court emphasized in its holding that "no processing or other material change occurred during transit by

---

[1] Title for all petroleum products passes from the Supplier to the end-user, once the producst are delivered by the Plaintiff/Driver. (2d SOF ¶¶7,8,10,11,12.)
[2] The term "Supplier" and "Shipper" are interchangebable in this pleading.

a third party transporting company, ("Colonial Pipeline Company") who facilitated transporting the products to another terminal. Just like in the case at bar, once the petroleum products are loaded by the Suppliers into the Defendants' tanker trucks, no changes were made to the petroleum products and no additives are added by the Defendants or Plaintiff. (2d SOF ¶¶8, 10.)

In further support of applying the Motor Carrier Exemption to the present action is the holding in *Narbona v. Gold Coast Beverage Distributors, Inc.*, 1:13-CV-24148-UU 2014 WL 11906594 *6 (S.D. Fla. July 15, 2014.) The *Narbona* Court held that while the beer products were in the possession of the Defendants, the beer products were never altered or modified and as such, constituted "one continuous stream of interstate commerce." Accordingly, the Motor Carrier Exemption applies as a matter of law.

This Court should apply the holdings in both *Galbreadth* and *Narbona*, to the present action, because similar to the case at bar, there was clearly no processing or other material changes that occurred to the petroleum products once the petroleum products were turned over to the Plaintiffs/drivers on behalf of the Defendants. (2d SOF ¶¶8,10.) As such, the Plaintiffs' intrastate movement of the petroleum products was definitely the final leg in interstate commerce and thus, the Motor Carrier Exemption applies to the case at bar.

The Plaintiffs supported their argument of material changes that affect the, "character, utility, and value," of products that moved interstate with *Arkadelphia Milling Co, v. St. Louis Southwestern Railway, Co.*, 249 U.S. 134 (1919), where the Supreme Court held that transporting of trees from the woods to a mill where it was made into staves, headings and hoops, was not movement in interstate commerce because it was not intended that the lumber be

4

transported out of the state, or elsewhere beyond the mill, until it had been subjected to a manufacturing process that materially changed its character, utility, and value. *Id.* at 150-51.

In the second case, *Pritchett v. Werner Enterprises, Inc.,* 12-0182-WS-C, 2013 WL 6909892 (S.D. Ala. Dec. 31, 2013), the Court found that driving a yard truck between Boise's facilities or to a gas station did not begin an interstate journey and does not constitute the transportation of property in interstate commerce for purposes of the MCA exemption, especially in light of Boise's corporate representative who testified that Boise had no intent to ship jumbo rolls to other states. *Id.*

The third case that the Plaintiffs relied on involved the transporting of soybeans from CF Industries ("CF") to two separate plants, one plant was part of a cooperative owned by CF and the other plant was owned by a third party, who processed the soybeans into soybean meal and soybean oil. *Roberts v. Levine*, 921 F.2d 804 (8th Cir.1990.)[3] Interestingly, the Court found that CF was engaged in interstate commerce, when shipping soybeans to their member cooperatives. Id. at 814. However, regarding the transportation of soybeans to the third party processing plant the Court held that CF did not have fixed and persistent intent to ship raw soybeans in interstate commerce. *Id* at 816.

"A critical factor in determining the shipment's essential character is the shipper's 'fixed and persisting intent' at the time of the shipment." *Mena v. McArthur Dairy, LLC*, 352 Fed. Appx. 303, 306 (11 Cir. 2009) (quoting 29 C.F.R. § 782.7(b)(2)). This intent is to be assessed "from all of the facts and circumstances surrounding the transportation." Mena, 352 Fed. Appx. at 306 n.2 (internal quotes omitted).

5

Contrary to the intent of the shipper in *Arkadelphia, Pritchett, and Roberts,* the Shippers "fixed and persisting intent of the Suppliers at the time of the shipments" in the case at bar as manifested "from all of the facts and circumstances surrounding the transportation," clearly established that the Suppliers' intent from the time the petroleum products was refined at the Suppliers' refineries, shipped interstate to Port Everglades, where the Plaintiff driver delivered the petroleum products to the Suppliers' end-user retail gas stations, was to engage in interstate commerce. (2d SOF ¶¶3,4.)

### III. The Shipper's Fixed and Persistent Intent in Their Pertoleum Products Did Not End When The Petroleum Products Arrived at Port Everglades, Florida.

In support of the Plaintiffs' claim that the shipper's fixed and persistent intent ended at Port Everglades, the Plaintiffs are relying substantially on the *Romero v, Fueltech Oil Service, Corp.*, 09-21948, 2010 WL11505519 (S.D. Fla. April 5, 2010) where the Court held that "since the shippers' intent was only to get the fuel into Florida, but not to continue on as a separate leg of interstate commerce … the Defendants' intrastate distribution of the fuel simply does not meet the interstate commerce requirement." *Id.* at 10.

In *Romero,* the Court found that: (i) each purchase of fuel was for later distribution from outside sellers. *Id.* at 2; (ii) once the fuel products are delivered to Port Everglades by supplier Targa, Targa's trucks transported the fuel to the Defendants' own local facility, where it is placed into the Defendants' own temporary storage tanks. Id. at 2, 3; (iii) once the fuel is in the Defendant's own storage tanks, the Defendants distribute their fuel to their own customers. *Id.* at 3; (iv) there is no evidence that the supplier Targa had any contact with the Defendants'

---

[3] *Roberts v. Levine*, 921 F.2d 804, 807, 816 (8th Cir.1990) was not a MCE case, it was a declaratory action based on a supremacy clause issue between the state regarding enforcement authority.

customers or with the fuel after it is placed in the Defendants' storage tanks. Id. at 3; (v) the shippers did not have contract with the retail gas stations or other fuel end-users. The Romero Court, based on these facts, could not conclude that the shipper had a fixed and persistent intent for the fuel to continue past the storage point, as this storage point belonged to the Romero Defendants, not the Supplier. Id. at 10.

However, the Romero facts are clearly distinguishable from the case at bar. The Defendants do not sell or broker the sale of petroleum products to anyone, they are a common carrier whose sole purpose is the transportation of petroleum products from the Suppliers' fuel terminals at Port Everglades to the Suppliers' end-user retail customers, which is supported by a Bill of Lading that is created for each delivery, based on historical sales, standing orders and end-user usage by the Suppliers' retail gas stations (SOF ¶¶9 & 10; AFF. ¶¶25, 26; 2d SOF ¶¶ 3,4)[4] At no time did the Plaintiffs/drivers transport petroleum products from the Suppliers' fuel terminals to third party facility or facilities owned or controlled by the Defendants; all deliveries were made directly from the Suppliers terminals to the end-user retail gas station as reflected on the Bills of Lading. (2d SOF ¶¶3,15.) Further, title to the petroleum products is held by the Suppliers until the Plaintiffs deliver the petroleum products to the retail end-user. (2d SOF ¶¶11,12.) For the Plaintiffs to rely on the rationale of Romero to support their claim is egregious in that the salient and material facts are clearly distinguishable from the facts in the present action.

Furthermore, the Plaintiffs failed to reference the DOT's issued guidance as to its jurisdiction under the MCA for "motor traffic moving from warehouses or similar facilities to

---

[4] Bills of Lading are created based on standing orders from Suppliers' ratable volume of fuel as determined by the Suppliers; which is based on various supply agreements, historical performance and sales with the end-user gas stations as determined by the petroleum Suppliers. (AFF. ¶27; 2d SOF ¶3.)

7

points in the same state after or preceding a movement from another state." 57 Fed. Reg. 19812, 19813 May 8, 1992. These newer DOT guidelines incorporate case law that was developed subsequent to the cases upon which section 782.7(b)(2) was originally based. U.S. Department of Labor, Wage and Hour Division, Opinion Number FLSA-2005-10, January 11, 2005 ("DOL-FLSA 2005-10.")

The DOT now provides the following factors which are clearly met in this case, for determining the "fixed and persisting intent" of a shipper (i.e. the Suppliers) that merchandise continue in interstate commerce when moving goods intrastate from storage facilities, in that: (i) The Suppliers know the ultimate destinations of their shipments as is the case with the present action, in that the Suppliers' shipment to the end-user is based upon standing orders from Suppliers' ratable volume of fuel which is based on various supply agreements, historical performance and sales with the end-user gas stations as determined by the Suppliers. (2d SOF ¶¶3,4;AFF. ¶28.) (ii) There is no processing or substantial product modification that takes place at Port Everglades by the Defendants; any additives that may have been added by the Suppliers does not materially alter or change the character of the petroleum products. (SOF ¶17; (2d SOF ¶¶5,6.) The petroleum products are subject to de minimus "storage in transit"[5] at Port Everglades, until the products are loaded into the Defendants' tankers and the Plaintiffs deliver them to the retail locations, in accordance with the Bills of Lading. (2d SOF ¶¶3,13; AFF. ¶28; SOF ¶¶5,9.) (iii) The petroleum products while at Port Everglades are maintained at the fuel terminals owned, controlled and operated by the Suppliers and documented and tracked by the

---

[5] "Storage in Transit," is defined as the storing at an intermediate point of goods that are to be reshipped to their final destination with in a prescribed period. Merriam-Webster.com. September 9, 2017.

Suppliers. *Id.* (iv) The Suppliers are ultimately responsible for all transportation charges relating to the Defendants. *Id.*

At no point in the Plaintiffs' Motion for Summary Judgment did the Plaintiffs reference or cite the regulations promulgated by the U.S. Department of Labor Wage and Hour Division, ("DOL") Fact Sheet #19, November 2009; or DOL-FLSA 2005-10[6]; which are clearly on point and dispositive to the finding that the Parties were engaged in interstate commerce. In DOL-FLSA 2005-10, the facts are completely analogous to the case at bar as it involves an employer that facilitates transportation by truck of shipments of gasoline, diesel fuel, and ethanol that have previously moved across state lines by pipeline, rail, or ship. These petroleum products have been produced by the major petroleum refining companies (Suppliers) and shipped by various means to their retail customers and commercial users. The truck drivers pick up the petroleum products at various terminals or storage facilities after their previous movement and transports the petroleum products over the last leg of the delivery to the retail customers. (2d SOF ¶¶3,4.) The question posed to the DOL is whether these drivers (like the Plaintiffs at bar) are subject to the FLSA's section 13(b)(1) overtime exemption during this intrastate movement. The DOL held that the foregoing facts qualify as interstate activity under the MCA, and thus the drivers are exempt from overtime under section 13(b)(1). DOL-FLSA 2005-10.

## **CONCLUSION**

It is abundantly clear, that the Plaintiffs and the Defendants are engaged in interstate commerce; not only as pled by the Plaintiffs in their three (3) versions of their Complaint; but

---

[6] This Opinion Letter resulted in the DOL withdrawing opinion letters dated March 19, 1974, April 1, 1981, August 23, 1982, and January 24, 1985 to the extent that these letters conflict with the position described in FLSA 2005-10.

because the Defendants have unequivocally shown that the Plaintiffs' transportation of petroleum products for the Suppliers was clearly part of the "practical continuity of movement" across state lines as the final leg in interstate commerce, in conformity with the controlling law and DOL regulations.

For the foregoing reasons, the Defendants respectfully request that this Honorable Court deny the Plaintiff's Motion for Summary Judgment in favor of the Defendants and declare that the parties herein clearly fall within the Motor Carrier Exemption, under Section 13 (b)(1) of the FLSA and 29 U.S.C. §213(b)(1).

Respectfully submitted:

RANDY M. GOLDBERG, ESQUIRE
1101 SW 71ST Avenue
Plantation, FL 33317
754-224-0867
FBN: 045187
rmgesq@comcast.net

CERTIFICATE OF SERVICE

I certify that a copy of this pleading which was filed with the Clerk of the Court was provided to the Plaintiff's attorney, Elliot Kozolchyk, Esquire, Koz Law, P.A. 320 SE 9th Street, Fort Lauderdale, FL 33316 @ ekoz@kozlawfirm.com via the CM/ECF-Portal on Nov. 5, 2017.

*Randy M. Goldberg Esquire*
RANDY M. GOLDBERG & ASSOCIATES, PA
1101 SW 71ST Avenue
Plantation, FL 33317
754-224-0867
FBN: 045187
rmgesq@comcast.net

---

These withdrawn letters were all written before the most recent (1992) DOT interpretation that is the basis of the position taken in this letter.