UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 17-CV-60098-WJZ

CLAUDIO ALFONSO PALLARES, et al.
          Plaintiffs,

Vs.

CWC TRANSPORTATION, LLC, Et. al.,
          Defendants.
_____/

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

The Defendants file this Reply to the Plaintiffs' Response to the Defendants' Motion for Summary Judgment.

### INTRODUCTION

The sole issue before the Court is whether the Plaintiffs transportation of Petroleum Products from the Suppliers' terminals at Port Everglades, Florida to the retail gas stations was part of the practical continuous stream of interstate commerce. The Plaintiffs contend that their duties were not part of interstate commerce. The Defendants contend that the Plaintiffs' duties are part of interstate commerce; as such the Motor Carrier Exemption ("MCE") applies to the case at bar; therefore the Defendants' Motion for Summary Judgment should be granted.

### ARGUMENT

#### I. Plaintiffs Pled That They Were Engaged in Interstate Commerce

The Plaintiffs clearly pled in their three (3) versions of the Complaint (DE 1, ¶3; DE 30 ¶3; & DE 45 ¶3) that the Plaintiffs worked as truck drivers delivering petroleum products for the Defendants and that the Defendants "engaged along with its employees in interstate commerce." (DE 63 §III(A); SOF ¶¶1 & 13.)

The Plaintiffs are now claiming that the only reason that they pled as they did was to establish the FLSA's Enterprise Coverage. (DE 63, P.3) The Plaintiffs' argument is defective in that the plain language of their averment states that the Plaintiffs are all employees driving and

1

transporting petroleum products for their employer the Defendants and that the **Defendants engaged along with its employees in interstate commerce**. *Id.* There was no reference in the Complaints that this averment was for or limited to the establishment of FLSA' Enterprise Coverage.

The Plaintiffs cited no legal authority to support their claim that what they pled, was not what they meant, and/or that what they pled was limited to establishing the applicability of the FLSA and not to invoke the Motor Carrier Exemption.

The Plaintiffs attempted to bolster support for their argument by relying on the Order by the Honorable Ursula Ungaro, denying a Motion to Dismiss in regards to a similar case with the same Defendants, but a different Plaintiff. The core rationale behind Judge Ungaro's Order of denial was that, "Because the Court is limited to the four corners of the Plaintiff's Complaint in ruling on a motion to dismiss under Rule 12(b)(6) and based on Plaintiff's allegations, [the Court] cannot find that Defendants satisfy either prong of the motor carrier exemption."[1] This is the same rationale applied by this Court in Honorable Judge William J. Zloch's Order [DE-67] denying a mirror motion to dismiss in this action. Judge Zloch wrote "that the legal issues raised by Defendants instant motion [Motion to Dismiss] are more properly addressed in a Motion for Summary Judgment, when discovery may present the Court with a full record upon which it may address and decide said issues." [DE-67]

Plaintiffs must include factual allegations for each essential element of their claim in their complaint *GeorgiaCarry.org, Inc. v. Georgia*, 687 F.3d 1244, 23 Fla. L. Weekly Fed. C 1323 (11th Cir., 2012); and that judicial admissions must be clear, deliberate, and unequivocal factual assertions—whether made in pleadings, stipulations, responses to discovery, or orally in trial or court proceedings. *In re Malia*, No. 09–42273, 2012 WL 909738, *2 (Bkrtcy. N.D. Ga. Feb. 8, 2012) (quoting *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir.1995). Further, such "factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. Arco/polymers, Inc.*, 720 F.2d 1391 (5th Cir. 1983), citing *Myers v. Manchester Insurance & Indemnity Co.*, 572 F.2d 134 (5th Cir. 1978; *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 110 F.Supp.3d 1285, 1293 (N.D.

Ga., 2014) ("Judicial admissions '*in judicio*' are 'formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.'"

For the Plaintiffs to now be allowed to recant or ignore their previous pleadings would be repugnant to the holdings and responsibilities detailed in *GeorgiaCarry.org, Inc.,* 687 F.3d at 1244; et. al. Accordingly, this Court should find that the Plaintiffs' representation in their Complaint that they engaged in <u>interstate commerce</u> is a proper admission.

## II. Plaintiffs' Clean Air Act & Additive Argument is Meritless

The Plaintiffs' theory that the Clear Air Act of 1970, as amended in 1990 ("CAA"), required a change to the material character of the gasoline received at the Supplier's fuel terminals that resulted in the termination of the interstate character of the petroleum products, is without any supporting authority.

None of the cases cited by the Plaintiffs in their Motion for Summary Judgment or in their Response to the Defendants' Motion for Summary Judgment, where the issue of material changes to products were addressed, involved petroleum products, nonetheless the CAA. As such, the Plaintiff's argument relying on the CAA and the addition of chemical additives and/or ethanol, has no precedential or judicial support.

Any additives to the Suppliers' petroleum products made at Port Everglades was made by the Suppliers and not the Defendants or the Plaintiffs, as the Defendants were common carriers of the Suppliers products. (2dSOF ¶¶6 - 10.) In *Galbreath v. Gulf oil Corp.*, 413 F 2d 941 (5th Cir. 1969), the Court held that "no processing or other material change occurred during transit by a third party transporting company, (a common carrier like the Defendants in the case at bar) who facilitated transporting the products to another terminal. *Id.*

In *Narbona v. Gold Coast Beverage Distributors, Inc.*, 1:13-CV-24148-UU 2014 WL 11906594 *6 (S.D. Fla. July 15, 2014), the Court held that while the beer products were in the possession of the Defendants, the beer products were never altered or modified and as such, constituted "one continuous stream of interstate commerce." Accordingly, the Motor Carrier Exemption applies as a matter of law. *Id.*

---

[1] Avila v. CWC Transportation, et al, Case No. 17-CV-60041; [DE-13, p.5]

3

This Court should apply the holdings in both *Galbreadth* and *Narbona*, to the present action, because as in the case at bar, there was clearly no processing or other material changes that occurred to the petroleum products once the petroleum products were turned over to the Plaintiffs/drivers on behalf of the Defendants. (2d SOF ¶¶8,10.)

### III. The Shipper's Fixed and Persistent Intent in Their Petroleum Products Did Not End When The Petroleum Products Arrived at Port Everglades, Florida.

"A critical factor in determining the shipment's essential character is the shipper's 'fixed and persisting intent' at the time of the shipment." *Mena v. McArthur Dairy, LLC*, 352 Fed. Appx. 303, 306 (11 Cir. 2009) (quoting 29 C.F.R. § 782.7(b)(2)). This intent is to be assessed "from all of the facts and circumstances surrounding the transportation." Mena, 352 Fed. Appx. at 306 n.2 (internal quotes omitted).

In their Motion for Summary Judgment, the Plaintiffs relied on *Romero v. Fueltech Oil Service, Corp.*, 09-21948, 2010 WL11505519 (S.D. Fla. April 5, 2010) to impute the Shippers' fixed and persistent intent in the case at bar. Even though, *Romero* was clearly distinguishable from the facts in the case at bar, *Romero* is instructive in determining what a shippers' intent is.

The *Romero* Court held that since the shippers' intent was only to get the fuel into Florida, but not to continue on as a separate leg of interstate commerc the Defendants' intrastate distribution of the fuel does not meet the interstate commerce requirement." *Id.* at 10.

In *Romero*, the Court found that: (i) each purchase of fuel was for later distribution from outside sellers. *Id.* at 2; (ii) once the fuel products are delivered to Port Everglades by supplier, the supplier's trucks transported the fuel to the Defendants' own local facility, where it is placed into the Defendants' own temporary storage tanks. Id. at 2, 3; (iii) the Defendants distribute their fuel to their own customers. *Id.* at 3; (iv) there is no evidence that the supplier had any contact with the Defendants' customers or with the fuel after it is placed in the Defendants' storage tanks. *Id.* at 3; (v) the shippers did not have contracts with the retail gas stations or other fuel end-users. The Romero Court, based on these facts, could not conclude that the shipper had a fixed and persistent intent for the fuel to continue past the storage point, as this storage point belonged to the *Romero* Defendants, not the Supplier. *Id.* at 10.

4

The *Romero* facts are clearly distinguishable from the case at bar. The Defendants at bar do not sell or broker the sale of petroleum products to anyone, they are a common carrier whose sole purpose is the transportation of petroleum products from the Suppliers' fuel terminals at Port Everglades to the Suppliers' end-user retail customers. This is supported by a Bill of Lading that is created for each delivery, based on historical sales, standing orders and end-user usage by the Suppliers' retail gas stations (SOF ¶¶9 & 10; AFF. ¶¶25, 26; 2d SOF ¶¶ 3, 4, 11,12)[2] At no time did the Plaintiffs/drivers transport petroleum products from the Suppliers' fuel terminals to third party facility or facilities owned or controlled by the Defendants; all deliveries were made directly from the Suppliers terminals to the end-user retail gas station as reflected on the Bills of Lading. (2d SOF ¶¶3,15.)

Even though the Plaintiffs cites 29 C.F.R. §782.7(b)(2), in support of their argument, the Plaintiffs failed to reference the DOT's issued guidance as to its jurisdiction under the Motor Carrier Act for "motor traffic moving from warehouses or similar facilities to points in the same state after or preceding a movement from another state." 57 Fed. Reg. 19812, 19813 May 8, 1992. These newer DOT guidelines incorporate case law that was developed subsequent to the cases upon which section 782.7(b)(2) was originally based. U.S. Department of Labor, Wage and Hour Division, Opinion Number FLSA-2005-10, January 11, 2005 ("DOL-FLSA 2005-10.")

The DOT pursuant to 57 Fed Reg. 19812 provides the factors for determining the "fixed and persisting intent" of a shipper (i.e. the Suppliers). The Plaintiffs argued against the application of DOL-FLSA 2005-10, in part, because the party in DOL-FLSA 2005-10 only met three (3) of the seven (7) delineated factors in opining that the party had the requisite fixed and persisting intent required under interstate commerce. DOL-FLSA 2005-10 at P.3. In the case at bar, all seven (7) of the factors are met (DE-54, P.15; AFF. ¶28). The DOL further holds that the presence of any of the following additional factors is not sufficient to break the continuity of the interstate character of transportation: (i) Shipper's lack of knowledge of the specific, ultimate destination, or consignee at the time the shipment leaves its out of state origin; (ii) separate bills of

---

[2] Bills of Lading includes who the Supplier & their Marketing/Distribution Agent is, the common carrier (the Defendant), the driver, the end-user customer, the contents of the fuel transportation and

5

lading for inbound or outbound movements; (iii) Storage-in-transit tariff provisions; (iv) storage receipts issued by the warehouse distribution centers; (v) time limitations on storage; (vi) payment of transportation charges by the warehouse or distribution center, when the shipper or consignee is ultimately billed for these charges; (vii) routing of the outbound shipments by the distribution center; (viii) a change in carriers or transportation modes at a distribution facility; (ix) use of brokers retained by the shipper; (x) use of a warehouse not owned by the shipper. 57 Fed Reg. at 19813; DOL-FLSA 2005-10 at P.3.

Not only does the present action meet all seven (7) factors set forth by the DOL for determining the fixed intent of the shipper/supplier to engage in interstate commerce; but the further clarifying factors, which according the DOL would not undermine the supplier's intent, further negates any argument by the Plaintiffs' that the Suppliers did not have the requisite intent to engage in interstate commerce. *Id.*

The Plaintiffs further argue that the Plaintiffs do not fit into either Category A or B, as set forth in DOL-FLSA 2005-10 at P.3. [DE-63, P14] The Plaintiffs are incorrect. Based on the delineated factors the Plaintiffs fit into both Categories. If the Court found that the Suppliers' Distributors/marketers are working on behalf of the Suppliers as their agents (AFF. ¶¶5, 27, 28), the Plaintiffs would be in Category A. If the Court found that the Suppliers transferred their interest to their Distributors/marketers before the products were delivered to the retail end-user as opposed to the Supplier themselves, then the Plaintiffs would fall under Category B. Either way, the Plaintiffs satisfy the Category issue in DOL FLSA 2005-10 at P.3, and qualify as interstate activity under the Motor Carrier Act. *Id.*

In DOL-FLSA 2005-10, the facts are completely analogous to the case at bar as it involves an employer that facilitates transportation by truck of shipments of gasoline, diesel fuel, and ethanol that have previously moved across state lines by pipeline, rail, or ship. These petroleum products have been produced by the major petroleum refining companies (Suppliers) and shipped by various means to their retail customers and commercial users. The truck drivers pick up the petroleum products at various terminals or storage facilities after their previous

---

that the fuel is proper condition for transportation, along with the fact the fuel had already been additivized. (AFF. ¶27, 28; 2d SOF ¶3.)

movement and transports the petroleum products over the last leg of the delivery to the retail customers. (2d SOF ¶¶3,4.) The question posed to the DOL is whether these drivers (like the Plaintiffs at bar) are subject to the FLSA's section 13(b)(1) overtime exemption during this intrastate movement. The DOL held that the foregoing facts qualify as interstate activity under the MCA, and thus the drivers are exempt from overtime under section 13(b)(1). DOL-FLSA 2005-10.

The Defendants recognize that unlike an agency's interpretation of ambiguous statutory terms or its own regulations, "an agency has no special competence or role in interpreting a judicial decision." *State of N.Y. v. Shalala,* 119 F.3d 175, 180 (2d Cir.1997). However, the Supreme Court has held in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944) that the "rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id. See Long Island Care at Home, Ltd. v. Coke,* 551 U.S. 158, 165 (2007) (explaining that the Secretary of Labor is authorized "to prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act.") Consequently, the DOL's interpretation is entitled, at least, to *Skidmore* deference to the extent the Court finds the interpretations, rulings, and opinion letters persuasive. *Glatt v. Fox Searchlight Pictures, Inc.,* 13-4478-CV (2d Cir. 2015.)

It is understandable why the Plaintiffs failed to acknowledge in their Motion for Summary Judgment, 57 Fed. Reg. 19812 (May 8, 1992); DOL Wage and Hour Division, Fact Sheet #19, November 2009 ("DOL Fact Sheets#19); or DOL-Opinion Letter FLSA 2005-10; because the DOL publications are clearly on point and dispositive to the proper finding that the Parties were engaged in interstate commerce.

The *Skidmore* Court held that when considering the deference to "rulings, interpretations and opinions of the Administrator," the "weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore,* 323 U.S. at 140; *Arriaga v. Florida Pacific Farms, LLC,* 305 F.3d 1228 (11th Cir. 2002.) Respectfully, this Court should find the cited DOL

7

publications persuasive and adopt the cited DOL opinion, interpretation, and fact sheet, applicable to the present action and for guidance in reaching its decision in the case at bar.

The "fixed and persisting intent of the Suppliers at the time of the shipments" in the case at bar as manifested "from all of the facts and circumstances surrounding the transportation," *Mena* 352 Fed. Appx. at 306, has been clearly established that the Suppliers' intent from the time the petroleum products was refined at the Suppliers' refineries, shipped interstate to Port Everglades, where the Plaintiffs/drivers delivered the petroleum products to the Suppliers' end-user retail gas stations, was to engage in interstate commerce. (2d SOF ¶¶3,4.)

## SYNOPSIS & CONCLUSION

It is abundantly clear, that the Plaintiffs and the Defendants are engaged in interstate commerce; not only as pled by the Plaintiffs in their Complaint; but because the Defendants have unequivocally shown that the Plaintiffs' transportation of petroleum products for the Suppliers was clearly part of the "practical continuity of movement" across state lines as the final leg in interstate commerce, in conformity with the controlling law and DOL guidelines. In closing, the Defendants want to direct to Court's attention to the following salient undisputed material facts and points of law:

1. The Plaintiffs clearly pled in their three (3) versions of the Complaint (DE 1, ¶3; DE 30 ¶3; & DE 45 ¶3) that the Plaintiffs worked as truck drivers delivering petroleum products for the Defendants and that the Defendants "engaged along with its employees in interstate commerce." (DE 63 §III(A); SOF ¶¶1 & 13.)

2. None of the cases cited by the Plaintiffs in their Motion for Summary Judgment or in their Response to the Defendants' Motion for Summary Judgment, where the issue of material changes to products were raised, involved petroleum products, nonetheless the CAA. As such, the Plaintiffs' argument relying on the CAA and the addition of chemical additives and/or ethanol, has no precedential or judicial support.

3. Any additives to the Suppliers' petroleum products made at Port Everglades were made by the Suppliers and not the Defendants or the Plaintiffs, before the Plaintiffs took control of the petroleum products loaded into their trucks. The Defendants were common carriers of the Suppliers petroleum products.

4. Even though 57 Fed. Reg. 19812 (May 8, 1992); DOL Wage and Hour Division, Fact Sheet #19, November 2009 ("DOL Fact Sheets#19); and DOL-Opinion Letter FLSA 2005-10 should only be given *Skidmore* deference, the DOL's body of experience and informed judgment to which courts and litigants may properly resort for guidance, which is consistent with the controlling statutory authority in support of the MCE and its application to the case at bar. No case was cited that would negate the application of these DOL publications to the present action

5. The Plaintiffs failed to initially acknowledge 57 Fed. Reg. 19812 (May 8, 1992; DOL Wage and Hour Division, Fact Sheet #19, November 2009 ("DOL Fact Sheets#19); or DOL-Opinion Letter FLSA 2005-10; in their pleadings which are clearly on point and dispositive to the proper finding that the Parties were engaged in interstate commerce.

6. The DOL publication of 57 Fed. Reg. 19812, 19813 May 8, 1992; DOL-FLSA 2005-10; and DOL-Fact Sheet #19, in 2009, were published well after the enactment of the Clean Air Act in 1970. However, the Clean Air Act was never referenced or even footnoted by the DOL in any of their publications.

7. The Plaintiffs' CAA argument was not referenced in any of the cases the Plaintiffs cited in support of their position and there are no interstate commerce cases identified, that include the Clean Air Act as an argument that relate to issues at bar.

8. There are no petroleum transportation cases cited by the Plaintiffs' in either their Motion for Summary Judgment or in their Response to the Defendants' Motion for Summary Judgment that were decided subsequent to the enactment of 57 Fed. Reg. 19812; the publication of the DOL FLSA 2005-10, or their Fact Sheet #19, which were instructive and relied upon 57 Fed. Reg. 19812, with the exception of *Romero*.

9. At no time did the *Romero* decision address the CAA argument advanced by the Plaintiffs or raise any of the aforementioned DOL interpretations, opinion letters, and rulings.

10. The DOL Fact Sheet #19, published in November 2009, clearly and without any ambiguity sets forth and mirrors the statutory criteria of applying the MCE to the present action, with the benefit of the interpretation and opinions of the DOL published under: 57 Fed. Reg. 19812, 19813 May 8, 1992; DOL-FLSA 2005-10; DOL Fact Sheet #19.

For the foregoing reasons, the Defendants respectfully request that this Honorable Court grant the Defendant's Motion for Summary Judgment and declare that the parties herein clearly fall within the Motor Carrier Exemption, under Section 13 (b)(1) of the FLSA and 29 U.S.C. §213(b)(1).

Respectfully submitted:

RANDY M. GOLDBERG, ESQUIRE
1101 SW 71ST Avenue
Plantation, FL 33317
754-224-0867
FBN: 045187
rmgesq@comcast.net

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading which was filed with the Clerk of the Court was provided to the Plaintiff's attorney, Elliot Kozolchyk, Esquire, Koz Law, P.A. 320 SE 9th Street, Fort Lauderdale, FL 33316 @ ekoz@kozlawfirm.com via the CM/ECF-Portal on Nov. 13, 2017.

*Randy M. Goldberg Esquire*
RANDY M. GOLDBERG & ASSOCIATES, PA
1101 SW 71ST Avenue
Plantation, FL 33317
754-224-0867
FBN: 045187
rmgesq@comcast.net